IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

UNITED STATES OF AMERICA,
     Plaintiff,

v.                          Case No. 5:11cv326/RS/CJK

JUDY GRACE SELLERS,
     Defendant.

_____

## REPORT AND RECOMMENDATION

This cause is before the Court upon plaintiff United States' motion for a default judgment of permanent injunction (doc. 65) against defendant Judy Sellers ("Sellers") pursuant to Federal Rules of Civil Procedure 55(b)(2) and 37(b)(2)(A)(vi), for Sellers' failure to comply with the Court's discovery order of December 19, 2012. The United States has submitted its proposed order of permanent injunction (doc. 68), and evidentiary material in support of its complaint and request for injunction (doc. 70). Sellers was served with copies of the United States' motion for default judgment, proposed order and evidence. (*See* Docs. 65, 68, 70). The Court provided Sellers notice of this default proceeding and an opportunity to respond. (*See* Docs. 66, 71). Sellers has not responded. Upon review of the record, the undersigned concludes that the United States' motion should be granted and that a default judgment of permanent injunction should be entered against Sellers.

BACKGROUND AND PROCEDURAL HISTORY

The United States brought this action for injunctive relief against Sellers under 28 U.S.C. §§ 1340 and 1345, and 26 U.S.C. §§ 7402(a) and 7408. (Doc. 5). The United States seeks to permanently enjoin Sellers from, among other things, engaging in and assisting others in engaging in conduct subject to penalty under 26 U.S.C. § 6700, that is, conduct that allegedly abuses the federal income tax system and promotes a fraudulent and frivolous tax scheme. (*Id*.). The United States alleges that Sellers, through the website www.commercialredemption.com, assists her customers in preparing and filing frivolous documents for the purpose of creating a purported "strawman," as part of a "redemption" scheme in which customers fraudulently apply for income tax refunds based on fraudulent documents, including fraudulent Forms 1099-OID.

Sellers was personally served with the summons and first amended complaint on October 28, 2011. (Doc. 6). On November 15, 2011, Sellers answered the complaint by filing a "Notice of Answer and Counterclaim and Liability of 3rd Party Defendants". (Doc. 7). On December 22, 2011, Sellers filed a "First Amended Notice of Answer and Counterclaim and Liability of Third Party Defendant". (Doc. 9). In those pleadings, Sellers attempted to name counsel for the United States as third-party defendants and attempted to assert a counterclaim against the United States based on largely nonsensical, and completely frivolous, tax protestor-type arguments. On May 25, 2012, the Court granted the United States' motion to dismiss, and dismissed Sellers' counterclaims against the United States and her third party-claims against counsel for the United States. (Doc. 28).

The undersigned scheduled a conference for June 26, 2012, to address matters of discovery and scheduling, and ordered the parties to appear by telephone. (Doc.

23).  Sellers did not appear.  (Docs. 35, 36).  Following the conference, the Court issued a Final Scheduling Order outlining the procedures and deadlines for discovery and other matters.  (Doc. 36).  The Final Scheduling Order required Sellers to provide the initial disclosures required by Federal Rule of Civil Procedure 26(a)(1), on or before July 5, 2012.  (Doc. 36).  On November 20, 2012, the United States filed a Motion to Compel Discovery under Federal Rule of Civil Procedure 37, alleging that Sellers failed to respond or produce documents requested in the United States' request for production of documents; failed to make her initial disclosures required by Rule 26(a)(1); and failed, after being served with proper notice, to appear for her deposition scheduled for November 28, 2012.  (Doc. 46).  On November 26, 2012, the Court ordered Sellers to respond to the United States' motion to compel.  (Doc. 49).  The Court warned Sellers that her failure to respond would result in the motion to compel being granted.  (*Id.*).  A copy of the November 26, 2012 order was mailed to Sellers at her address of record, but Sellers refused delivery, writing:  "Return to Sender – Unacceptable as per 18 U S C 1342".[1]  (Doc. 55).  On December 19, 2012, the Court granted the United States' motion to compel.  (Doc. 62).  The Court ordered, in relevant part:

---

[1] 18 U.S.C.§ 1342 provides:

**Fictitious name or address**

Whoever, for the purpose of conducting, promoting, or carrying on by means of the Postal Service, any scheme or device mentioned in section 1341 of this title or any other unlawful business, uses or assumes, or requests to be addressed by, any fictitious, false, or assumed title, name, or address or name other than his own proper name, or takes or receives from any post office or authorized depository of mail matter, any letter, postal card, package, or other mail matter addressed to any such fictitious, false, or assumed title, name, or address, or name other than his own proper name, shall be fined under this title or imprisoned not more than five years, or both.

      2. On or before **December 28, 2012**, defendant Judy Sellers shall produce the documents requested in the United States' First Request for Production of Documents.

      3. On or before **December 28, 2012**, defendant Judy Sellers shall make her initial disclosures as required by Federal Rule of Civil Procedure 26(a)(1) and this Court's scheduling orders (docs. 10, 36).

      4. Defendant Sellers shall appear for her deposition upon plaintiff's service of proper notice.

   . . .

      7. Defendant's failure to comply with paragraph (2), (3), or (4) above will result a recommendation to the District Judge that a default judgment be rendered against her.

(*Id*., pp. 1-2). A copy of the December 19, 2012 order was mailed to Sellers at her address of record, but Sellers again refused delivery, writing: "Refused - Return to Sender - Unacceptable Mail As Per: 18 U.S.C. 1342". (Doc. 64).

The United States' motion for default judgment followed. (Doc. 65). The United States asserts that Sellers has not made her initial disclosures or responded to its document requests. (*Id*., p. 3). The United States also asserts, accompanied by proof, that Sellers failed to appear for her deposition after the United States again properly noticed her deposition for January 15, 2013. (Doc. 65, Ex. A, Certificate of Non-Appearance). The United States served Sellers with the requisite written notice of its application for a default judgment on February 6, 2013, along with a copy of its proposed order of injunction. (Doc. 65, Certificate of Service). On February 22, 2013, the Court ordered Sellers to respond to the motion for default judgment within fourteen days, expressly warning Sellers that failure to respond would result in the entry of a default judgment. (Doc. 66). Sellers did not respond.

On March 14, 2013, the Court ordered the United States to file either a request for an evidentiary hearing or sufficient evidentiary material to resolve this case without an evidentiary hearing. (Doc. 69). The United States filed evidence in support of its request for a permanent injunction, serving Sellers with a copy of same. (Doc. 70). On March 27, 2013, the Court issued an Order and Notice that the United States' Motion for Default Judgment and Permanent Injunction (doc. 65), proposed order of permanent injunction (doc. 68), and supporting evidence (doc. 70) would be taken under advisement on April 10, 2013, for determination without oral argument or a hearing. (Doc. 71). The Court provided Sellers until April 10, 2013, to show cause, if any there be, why the proposed default judgment of permanent injunction should not be entered against her. (*Id*.). To date, Sellers has not responded.

## DISCUSSION

The United States is Entitled to a Default Judgment

Once a court determines that a defendant has not complied with an order, a district court may impose both coercive and compensatory sanctions. *See United States v. United Mine Workers of America*, 330 U.S. 258, 303-04 (1947). Compensatory sanctions include issuing a default judgment where a party fails to obey a discovery order in a civil case. Fed. R. Civ. P. 37(b)(2)(A)(vi); *see also FMC v. S.C. State Ports Auth.*, 53 U.S. 743, 758 (2002). "[T]he severe sanction of a dismissal or default judgment is appropriate only as a last resort, when less drastic sanctions would not ensure compliance with the court's orders." *Malutea v. Suzuki Motor Co.*, 987 F.2d 1536, 1542 (11th Cir. 1993) (internal citations omitted); *see also United States v. Certain Real Prop. Located at Route 1, Bryant, Ala.*, 126 F.3d 1314, 1317 (11th Cir. 1997) ("The decision to dismiss a claim or enter default judgment 'ought to be a last resort-ordered only if noncompliance with discovery orders is due to willful or bad

faith disregard for those orders.'" (*quoting Cox v. Am. Cast Iron Pipe Co.,* 784 F.2d 1546, 1556 (11th Cir.1986))).   Consideration must be given to such factors as good faith, willful disobedience, or gross indifference to the rights of the adverse party.  *See Thomas v. United States*, 531 F.2d 746 (5th Cir. 1976).   A district court is not required to first impose lesser sanction if the lesser sanction would be ineffective.  *Malutea* at 1544.

Rule 55 of the Federal Rules of Civil Procedure permits entry of a default judgment by the clerk without a hearing when "the plaintiff's claim against a defendant is for a sum certain or for a sum that can be made certain by computation". Fed. R. Civ. P. 55(b)(1).   In "all other cases," such as here, "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2).   As a result of the default, a defendant "admit[s] the plaintiff's well-pleaded allegations of fact" for purposes of liability.  *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987).   If the facts alleged in the complaint are sufficient to establish liability, the court must then conduct an inquiry to ascertain the terms of the judgment.  *Arista Records, Inc. v. Baker Enter., Inc.* 298 F. Supp. 2d 1310, 1312 (S.D. Fla. 2003).   "The court may conduct hearings . . . when, to enter or effectuate judgment, it needs to . . . establish the truth of any allegations by evidence . . . or investigate any other matter." Fed. R. Civ. P. 55(b)(2).   An evidentiary hearing is not required in every case.  *S.E.C. v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005) ("An evidentiary hearing is not a *per se* requirement; indeed, Rule 55(b)(2) speaks of evidentiary hearings in a permissive tone.").   A court may exercise its discretion not to hold an evidentiary hearing in limited circumstances, such as "where all essential evidence is already of record." *Id.*; *see also S.E.C. v. First Fin. Group of Tex., Inc.*, 659 F.2d 660, 669 (5th Cir. 1981) ("Rule 55(b)(2) does not require the district court to hold either an

evidentiary hearing or oral argument on a motion for a default judgment.") (*citing Thomas v. United States*, 531 F.2d 746, 748 (5th Cir. 1976) ("Taxpayer's first contention that the district court should have held an evidentiary hearing and/or oral argument on the motion is without merit.  All the essential facts were of record.")).

The severe sanction of default judgment is appropriate in this case, because Sellers' conduct is clearly willful and in bad faith.  Since the beginning of this case, Sellers has chosen to participate in this litigation only as she sees fit, and only for the purpose of filing frivolous documents.  (*See* Docs. 6, 8, 9, 13, 16, 19, 24, 27, 29, 30, 33, 37, 38, 39, 40, 50, 51, 52, 53, 54).  Sellers failed to appear at the scheduling conference, failed to make her disclosures required under Rule 26, and failed to cooperate in discovery.  Sellers refused delivery of several court orders that were sent to her by mail.  (*See* Docs. 44, 45, 55, 60, 63, 64).  After the Court granted the United States' motion to compel, Sellers failed to comply with the order directing her to make her initial disclosures, respond to the United States' discovery requests and appear for her deposition.  The United States has provided evidence by affidavit of Sellers' violation of the Court's discovery order.  (Doc. 65, Attach. 1).  Sellers is well aware of this litigation and this Court's attempts to contact her and require her to cooperate in discovery.  Sellers willfully chose not to cooperate in discovery, not to comply with court orders and not to participate in this litigation in any meaningful way.  Sellers' refusal to cooperate stems from her deliberate disregard of the judicial process and the rights of the plaintiff.  A less drastic sanction will not ensure Sellers' compliance with the Court's discovery order or the judicial process.  Her very act of defiance, in the face of the order compelling discovery, is itself evidence of the futility of lesser sanctions.

The United States is Entitled to a Permanent Injunction

Rule 65(d) of the Federal Rules of Civil Procedure requires that every order granting an injunction state the reasons why it is issued, state the terms of the injunction specifically, and describe in reasonable detail the act or acts restrained or required.  The United States seeks a permanent injunction pursuant to 26 U.S.C. §§ 7408 and 7402.  Section 7408 authorizes a district court to enjoin any person from engaging in conduct subject to penalty under §§ 6700 and 6701, if injunctive relief is appropriate to prevent recurrence of that conduct.  26 U.S.C. § 7408(a)-(c).  Section 7402 of the Internal Revenue Code authorizes district courts to issue injunctions "as may be necessary or appropriate for the enforcement of the internal revenue laws." 26 U.S.C. § 7402(a).  For an injunction under § 7402(a), the Eleventh Circuit requires a showing that:  (1) it is likely that the United States will suffer irreparable injury if the defendant's conduct continues; (2) it is unlikely that the defendant will be harmed by the injunction; and (3) an injunction will serve the public interest.  *United States v. Ernst & Whitney*, 735 F.2d 1296, 1301 (11th Cir. 1984).

Section 6700 of the Internal Revenue Code imposes a penalty on a person who, in connection with organizing, promoting, or selling a plan or arrangement, makes or furnishes, or causes another person to make or furnish, a statement that is false or fraudulent with respect to a taxpayer's ability to claim withholdings and other tax benefits.  26 U.S.C. § 6700(a)(2)(A).  Section 6701 imposes a penalty on any person who aids or assists in, procures, or advises with respect to, the preparation or presentation of any portion of a return, claim, or other document, who knows or has reason to believe that such portion will be used in connection with any material matter arising under the internal revenue laws; and who knows that such portion would result in an understatement of liability for tax of another person.  26 U.S.C. § 6701(a).

A.    <u>Findings of Fact</u>

Based on the well-pleaded allegations of the First Amended Complaint (doc. 5) and the evidence presented (doc. 70), the Court finds as follows. Defendant Sellers resides in Chipley, Florida. (Doc. 5, ¶ 4). Sellers is the creator and owner, and has been the administrative and technical contact of the website www.commercialredemption.com (hereinafter "Sellers' Website") (Doc. 5, ¶ 5; Doc. 70, Exs. 1, 22, 23, 24, 25). Sellers also answers correspondence sent through the "Contact Us" link of the www.commercialredemption.com website. (Doc. 5 ¶ 27, Doc. 70, Exs. 1, 23-G).

Sellers, through her website, promotes and assists her customers in preparing and filing frivolous documents for the purpose of creating a purported "strawman," as part of a redemption scheme in which customers fraudulently apply for income tax refunds based on fraudulent documents. (Doc. 5 ¶¶ 16, 50; Doc. 70, Exs. 1, 2, 3, 22A-B, 25). Sellers solicits customers for "Document Preparation Services", offering to prepare documents which, according to Sellers, are "the most current documentation available in the 'redemption' process". (Doc. 5 ¶ 18; Doc. 70, Ex. 22-A ("We will provide you with the most current documentation available in the 'redemption' process, as it applies to the 'secured party creditor' position . . . aka 'establishing your private exemption account.' We will prepare your 'basic' documents, provide mailing instructions, and probably give you the best 'price' you'll find anywhere!'")). Sellers advises her customers that they should use her document preparation services to "become a Secured Party Creditor" and gain access to their "prepaid account" with the Treasure, which will ultimately enable them to "set-off all of [their] debts.". (Doc. 5 ¶ 17, Doc. 70, Exs. 2, 22-A, 23-G, 25). Sellers advises that use of her services to create a "Secured Party Creditor" position "should be done before you try to utilize the 1099 [redemption] process". (*Id*.). Sellers advances the redemption scheme and

invites potential customers to fill out a "request form", stating: "Success will only come when you learn who you are and how to apply what you've learned. *We will, however, be more than glad to recommend teachers, seminars, etc.* If you are interested in our services, please fill out our request form, and we will get back to you soon as possible." (Doc. 70, Ex. 22-A).

Sellers' Website, www.commercialredemption.com, is currently active. (Doc. 70, Ex. 22). Sellers' Website invites customers to request information in order to receive a "Basic Document Package". The "Basic Document Package" consists of redemption scheme documents Sellers prepares to enable her customers to create their purported "Secured Party Creditor" position. Sellers' Website identifies the following documents, among others, as included in the "Basic Document Package": a UCC-1 Financing Statement (Notice of Security Interest – Notice of Lien), a "Notice of Security Agreement (Agreement of the Parties – to be recorded locally)", a "Power of Attorney (over the STRAWMAN)"[2], a "Birth Certificate Bond (Private Bond for Setoff)", a "Fiduciary Appointment (notice concerning fiduciary relationship)" and "Payment Voucher (initial payment voucher for account adjustment)." (Doc. 5, ¶ 25;

---

[2]According to a Circuit Court opinion:

"Redemption" is an anti-government scheme that utilizes commercial law to harass and terrorize its targets... According to the theory, the convict has a split personality: a real person and a fictional person called a "strawman." The strawman came into being when the United States went off the gold standard in 1933 and pledged its citizens as collateral for its national debt. Proponents of the theory believe that the government only has power over the strawman and not the real person. The real person, however, can "redeem" the fictional person by filing a UCC financing statement. This allows the real person to acquire an interest in the fictional person that trumps the government's power. Redemption theorists believe that the government must pay the real person millions of dollars to use the strawman's name or keep him in custody. If the official refuses to pay, the real person can file a lien.

*United States v. Landers*, 564 F. 3d 1217, 1219, n. 1 (10th Cir. 2009) (*quoting Monroe v. Beard*, 2007 WL 2359833, *2 (E. D. Pa. 2007)) (ellipsis in original).

Doc. 70, Ex. 22-B, Ex. 23-G). What Sellers calls the "Fiduciary Appointment" is IRS Form 56 (Notice Concerning Fiduciary Relationship). What Sellers calls the "Payment Voucher" is IRS form 1040-V. (Doc. 5 ¶ 25; Doc. 70, Exs. 11, 12).

Once customers contact Sellers through her Website, Sellers discloses her fee. (Doc. 17, Ex. 1 at 3, Ex. 23-G). After the customer pays the fee, Sellers prepares and e-mails the customers certain documents, including a Security Agreement (between the customer and his or her strawman) and Power of Attorney (which essentially appoints the customer as Power of Attorney for the strawman). (Doc. 5 ¶ 29; Doc. 70, Exs. 1, 5-7, 23-G). Sellers instructs her customers to sign each one in front of a notary, and to have the Power of Attorney and a Notice of Security Agreement recorded. (Doc. 5 ¶¶ 29-30; Doc. 70 Exs. 1, 4, 6, 23-6; Haseney Dep. 26:13 - 33:2). Sellers instructs her customers to send her the recorded copy of the Notice of Security Agreement along with the customer's birth certificate so that Sellers can stamp the birth certificate "Acceptance for Value" and complete the customer's UCC-1 Financing Statement. (Doc. 5 ¶ 30; Doc. 70, Ex. 1). The birth certificate is supposed to serve as the security for the bond. (Doc. 5 ¶ 30).

Sellers then prepares and mails, or instructs her customers to mail, a number of documents called the "Treasury Package". The "Treasury Package" includes a cover letter, the customer's birth certificate with the "AFV" stamp, the Birth Certificate bond, an IRS Form W-8 BEN, an IRS Form 56, a Declaration, an IRS Form 1040-V, and a registered mail card addressed to the Secretary of the Treasury. (Doc. 5 ¶ 30; Doc. 70, Exs. 2, 3, 10, 11, 24-C; Haseney Dep. 24:5 - 26:11). Sellers' "Instructions" sheet for the Treasury Package instructs her customers how to complete the provided documents, and where to send them. (Doc. 5 ¶ 30, Doc. 70, Exs. 2 and 24-C, Haseney Dep. 20:3-13 and 21:19 - 22:3). The documents Sellers prepares and provides to

others set the foundation for her customers to file Forms 1099-OID with the Treasury Department and to prepare federal income tax returns reporting false income, withholding, and refunds due. (Doc. 5 ¶¶ 31-32, 37-38, 44; Doc. 70, Ex. 22-A).

The frivolous IRS Forms 1099-OID filed by Sellers' customers are purportedly issued or received by Sellers' customers to or from a creditor of the customer, usually a credit card or mortgage company. (Doc. 5 ¶ 36). The amount of the false Original Issue Discount reported appears to be in an amount needed to satisfy a debt (usually everyday expenses such as a mortgage, car loan, or credit card debt) owed by the customer to the creditor. (*Id*.). The IRS Forms 1099-OID report tax withholding for the full amount of the phony Original Issue Discount. (*Id*.). The total amount of the false OID and false withholding are then claimed on the customer's IRS Form 1040. (*Id*. ¶ 37). The result of this is an inflated tax liability for the customer, but with a large false refund claim, oftentimes exceeding $100,000. (*Id*.). Consequently, Sellers' customers fail to file proper federal income tax returns and falsely claim tax refunds to which they are not entitled. (*Id*. ¶ 38).

For example, in the fall of 2008, Sellers prepared a document package for John Haseney ("Haseney"). Haseney communicated with Sellers via e-mail after finding her website online, which he recalled as titled "Commercial Redemption." (Doc. 70, Haseney Dep. 8:2-5, 9:7-10). Haseney sought assistance because, at the time, he owed money to credit card companies. (Haseney Dep. 8:6-21). Haseney came across Sellers' Website after entering search terms related to eliminating debt. (Haseney Dep. 9:11-16). Haseney connected with Sellers by sending her an e-mail through her website, and he received a response signed "Judy". The e-mail sent through Sellers' Website was directed to "webmaster@commercialredemption.com". (Doc. 70, Ex. 1 and Haseney Dep. 12:2-13:18).

Sellers and Haseney exchanged e-mails in September of 2008. (Doc. 70, Ex. 1 and Haseney Dep. 15:12 - 16:18). On September 24, 2008, Sellers responded to an inquiry from Haseney. (*Id*.). Sellers stated: "I will be happy to help you with Document preparation. Currently, the 'basic' package is all that I offer." (Doc. 70, Ex. 1). Sellers' response is signed "Judy-CommercialRedemption.com". (*Id*.). Sellers described her basic package as follows:

UCC-1 Financial Statement (Notice of Lien),

Security Agreement (Actual Lien),

Notice of Security Agreement (to be recorded locally),

Power of Attorney (over the strawman),

Birth Certificate bond (to be deposited at the US Treasury),

Form 56 (notice concerning fiduciary relationship),

Form W-8 BEN (serves notice to the Secretary of the Treasury of the correct status of the issuer of the bond, i.e., it is issued by a man, and it counters any presumption that the issuer might be considered to be a fictional entity-strawman),

Form 1040-V (initial payment voucher for account adjustment), Declaration of Status (notice of change of status),

Cover letters,

Certified/Registered mail stickers and all mailing essentials . . . i.e. receipts, green cards, etc., all properly filled out and included with mailing instructions.

(Doc. 70, Ex. 1). In the same e-mail to Haseney, Sellers stated that the fee for her service was "$400 - payable by postal money order only" and provided Haseney with

her full name and address. (Doc. 70, Ex. 1 at 3). This is Sellers' normal practice, as evidenced by an e-mail Sellers sent to another customer, Mr. Asa Patterson, on September 5, 2008, where Sellers also quoted her fee as $400 and requested that it be paid in money order form. (Doc. 70, Ex. 23-G). On September 25, 2008, as a result of Sellers' e-mail, Haseney addressed a money order to Judy Sellers at 938 Main Street, Chipley, Florida 32428, in the amount of $400.00, and sent that money order to Sellers through registered mail. (Doc. 70, Ex. 7, Haseney Dep. 33:5 - 34:16).

Sellers instructed Haseney to send her his original naturalization certificate and then, once she set up his "account at the Treasury", to send it to the Treasury Department. (Doc. 70, Ex. 1). Haseney sent Sellers his naturalization certificate, which Sellers then stamped "AFV". (Doc. 70, Ex. 14 and Haseney Dep. 12:5-18; 44:14 - 47:3). Sellers assisted Haseney in preparing a UCC-1 Financing Statement, which Haseney then signed. (Doc. 70, Ex. 15 and Haseney Dep. 50:2 - 52:2). Haseney filed the UCC-1 Financing Statement for the purpose of putting a lien on his "strawman" in order to, as he understood it, "protect myself from – from lawsuits by separating myself, the living man, which would be me, from the strawman, which is the – the entity in all capital letters created by the Government that has a Social Security number and all that." (Doc. 70, Haseney Dep. 22:9 - 23:9). Sellers then prepared a package of documents for Haseney to send to the Treasury Department. The documents included a Birth Certificate bond, a Notice of Security Agreement, a Security Agreement, a Power of Attorney, a Declaration to accompany Haseney's Form W-8 BEN, a form W-8 BEN, a Form 56, a cover letter to accompany the documents, and pre-prepared mailing labels for Haseney to send all of the documents to the Treasury Department. (Doc. 70, Exs. 3, 4, 5, 6, 8, 9, 10, 14).

On the "Instructions" sheet Sellers provided to Haseney, Sellers provided the e-mail address "jgsellers@panhandle.rr.com" and instructed Haseney to "please let me know right away if there are ANY mistakes on these documents. . . . If there are, I will make corrections and send to you as an email attachment . . ." (Doc. 70, Ex. 2). On the instruction sheet Sellers sent to another customer, Andra Bryan, Sellers provided the e-mail address "commercialredemption@commercialredemption.com", and closed with the same instruction regarding corrections. (Doc. 70, Ex. 24-C). Sellers' instruction sheets are signed "Judy" (doc. 70, exs. 2, 24-C), but Sellers does not sign the IRS forms or other documents she prepares for her customers. (*See* Doc. 70, Exs. 3, 10-12, 23-B, 23-D, 23-F).

By preparing the foregoing documents and mailing cards, Sellers assisted her customers in sending frivolous documents to the Treasury. Sellers actively promotes the redemption scheme and clearly recognizes that the documents she prepares and instructs others to send to the Treasury are used to support a later understatement on a federal tax return in an attempt to fraudulently receive refunds from the Treasury. (Doc. 5 ¶¶ 31, 32; *see also* Doc. 70, Ex. 23-G). The "Services" page of Sellers' Website states: "The Documents Service, and use thereof, assumes that you have a growing knowledge of the 'redemption' processes . . ." (Doc. 70, Ex. 22-B). Similarly, the "Contact Us" page of the Website invites prospective customers to fill out a form, and indicate their level of education in the "redemption process." (Doc. 70, Ex. 22-F). Sellers answers e-mail correspondence from customers regarding the redemption scheme and the 1099-OID process. (Doc. 5 ¶ 26, Doc. 70, Ex. 1, Ex. 23-G). For example, in September of 2008, Mr. Asa Patterson contacted Sellers, through www.commercialredemption.com, to inquire about the redemption process. (Doc. 5 ¶ 43; Doc. 70, Ex. 23-G). Sellers responded to Mr. Patterson by providing him with

a list of documents she includes in her basic package to initiate the commercial redemption process, necessary steps, and the fee for preparing these documents. Sellers' e-mail also explains to Mr. Patterson the Form 1099-OID redemption scheme and advises him that although she understands the 1099-OID process, she does not prepare the forms, but is able to refer him to other individuals who can assist him with the process. (*Id.*). Specifically, Sellers explains the 1099-OID process as follows: "The 1099-OID is a form that we use to re-coup payments made. (It is a return to the source). It identifies us as the sponsor of the credit that funded the bill(s) in the first place . . . i.e., credit cards, mortgage payments, car notes, etc. . . .The 1099-OID can be used anytime necessary, and then reported on the yearly 1040 for the refund." (Doc. 70, Ex. 23-G).

Both the "Resources" and "Links" tabs of Sellers' Website provide links to information related to the redemption scheme. Titles of the links include: "Thought You Were a Free Person" and "The Bankruptcy of the United States." (Doc. 70, Exs. 22-C, D). Prior versions of Sellers' Website contained similar information. (Doc. 70, Exs. 23-H, 23-I, 23-J). In 2008, Sellers' Website contained detailed information about the 1099-OID "redemption" process and purported to explain how customers could obtain refunds through false Forms 1099-OID. (Doc. 5 ¶ 19; Doc. 70, Exs. 23-H, 23-I, 23-J). Under a heading titled, "1099-OID BASIC INFORMATION OF HOW THIS IS DONE", Sellers explained:

> A. The State did not provide you with a check to pay the charges against you, so they are WITHODING [sic] TAXABLE INCOME WHICH IS FEDERAL WITHHOLDING so your charges continue on and you report that taxable income on a 1040, 1099OID and 1096. All taxable income must be reported to the IRS. The Court still shows you owe the taxable income (the bill/bond

amount) and that is the detainer they use to hold your body with.

You should have a 1040, 1099 OID and a 1096 filed for the bill or Bond amount. The taxable income withheld needs to be assessed on a 1040 to identify whose income they are withholding. IT'S YOUR INCOME CLAIMED.

If a 1040 is not filed you are at the mercy of the Prosecutor using his public deferral, which is a set-off and that set-off is used to detain you and keep you under the jurisdiction of the court/jail. The only way you can zero the account/issue is to claim the taxable income being charged to you on the 1040, 1099 OID and 1096.

If you have your 1040, 1099 OID and 1096 filed you have now vouched for your claim of Title. Now the State prosecutor needs to produce his individual 1040 tax return to vouch for the claim of the title in fact. (He doesn't have one.) It is the 1040 that is the Certificate of Title to show who make a claim to a Title to something. If they don't have that 1040 they are withholding taxable income belonging to the person whose name is on the bill/bond. You need to ask the Prosecutor if he is making a claim ex-officio or otherwise.

(Doc. 70, Ex. 23-H).

Sellers informs her customers how to obtain "education" on the Form 1099-OID process from others, and has in the past referred her customers to tax return preparers who prepare returns claiming bogus refunds on them. (Doc. 5 ¶¶ 33-35; Doc. 70, Ex. 16, Haseney Dep. 52:6-15). For example, in 2008, Sellers referred customers to Teresa Marty for assistance with the 1099-OID submission process. (Doc. 5 ¶ 34; Doc. 70, Ex. 23-G, Ex. 25 ¶ 13). In 2010, Marty was permanently enjoined from preparing tax returns for others as a result of her preparation of tax returns claiming bogus refunds based on false Forms 1099-OID. *United States v. Marty*, No. 2:09cv600, 2010 WL 323518 (E.D. Cal. 2010).

Sellers has admitted, by failing to respond to the United States' requests for admission, that she has prepared fraudulent Forms 1099-OID for others; that she advises others on the process of creating fraudulent forms 1099-OID; and that she advises other individuals to prepare fraudulent Forms 1099-OID knowing that those individuals would file the false Forms 1099-OID with the IRS and knowing that those individuals would claim bogus refunds on their federal income tax returns. (Doc. 5 ¶¶ 35, 41-43; Doc. 70, Ex. 25 ¶¶ 5, 6, 7, 9).

Sellers herself has prepared at least one Form 1040 claiming a false refund based on a false Form 1099-OID. (Doc. 5 ¶ 45 ; Doc. 70, Ex. 25 ¶ 15). In 2007 Sellers prepared a fraudulent Form 1040 for Jeffrey Lundin. (Doc. 70, Ex. 23-A, 24-A, Ex. 25 ¶ 15). The tax return includes purported income from several Forms 1099-OID, and it requests a refund in the amount of $5 billion. (Doc. 70, Ex. 23-A). Sellers did not sign the Lundin return, but in an e-mail dated September 24, 2008, Sellers admitted that she prepared several documents for Lundin, including a Form 1099-OID, and a Form 1040. (Doc. 70, Ex. 24-A, Ex. 23-B). With regard to the Form 1040, Sellers stated, "I'm sure I made plenty of mistakes on that!" (*Id.*).

Sellers is aware that her positions are not supported by any legal authority. The home page of her website currently says:

> NOTICE: There are some rogue "agents" out there that work for the "so-called" US Gov't (which is just another fictional corporate entity), that are accusing this website, and others like it, of promoting "fraudulent tax schemes", and tax defier positions.
>
> This is hereby NOTICE of DENIAL of that accusation. This website has NEVER promoted fraudulent schemes, (tax or otherwise), nor does this website advise ANYONE to avoid or refuse to pay ALL LAWFULLY owed taxes.

(Doc. 70, Ex. 22-A).

Sellers' scheme is part of a growing, nationwide trend to file frivolous tax returns and Forms 1099-OID with the IRS in an attempt to escape federal tax obligations and steal from the United States Treasury. (Doc. 5 ¶ 48). This scheme, and related schemes, may be identified as falling under the category of "commercial redemption". (*Id.* ¶ 49). As set out at footnote two, *ante*, proponents of commercial redemption claim that the United States government is in possession of money rightfully owned by the taxpayer. Sellers has told, and may continue to tell customers that they can recover their money from the United States through filing bogus forms 1099-OID and/or 1099-A financial instruments based on the theory that the United States government has created a "strawman" for each United States citizen. Sellers has generated and filed, and will likely continue to generate and file for others, documents to support fraudulent income tax returns of federal tax payments that were never made. Sellers' record of recalcitrance, as well as her disregard of court orders, provides substantial evidence that the United States should have a reasonable means to track Seller's compliance with the remedy recommended by the undersigned.

B.    Conclusions of Law

The United States is entitled to a default judgment against Sellers based on her failure to cooperate in discovery and failure to comply with the Court's discovery order (doc. 62). The United States is entitled to a permanent injunction against Sellers pursuant to 26 U.S.C. §§ 7408 and 7402. The United States has established the truth of the allegations in its First Amended Complaint – that defendant Judy Grace Sellers is engaging in conduct subject to penalty under 26 U.S.C. §§ 6700 and 6701 and is interfering with the administration of the internal revenue laws. Sellers has engaged in conduct subject to penalty under 26 U.S.C. § 6700(a)(2)(A). By promoting the

Secured Party Creditor position on her website, www.commercialredemption.com,

Sellers organized, promoted and sold, or assisted in organizing, promoting and selling,

a plan or arrangement to defraud the United States Treasury.  In doing so, Sellers

made or furnished, or caused to be made or furnished, false or fraudulent statements

with respect to a taxpayer's ability to claim false withholding and other tax benefits.

Sellers knew or had reason to know that her statements were false or fraudulent,

because they were predicated on the submission of false or fraudulent documents to

the IRS.  Sellers has also engaged in conduct subject to penalty under 26 U.S.C. §

6701.  Sellers prepared and/or aided, and/or assisted in, and/or advised in the

preparation of fraudulent Forms 56, Notice of Fiduciary Relationship.  Sellers

prepared and/or aided, and/or assisted in, and/or advised in the preparation of

fraudulent Forms W-8 BEN, Certificate of Foreign Status of Beneficial Owner for

United States Tax Withholding.  Sellers prepared and/or aided, and/or assisted in, and

/or advised in the preparation of fraudulent forms 1099-OID, and other fraudulent tax

forms.  Sellers knew that the filing of the fraudulent documents would result in

drastically understating other taxpayers' federal income tax liabilities.   Injunctive

relief is appropriate to prevent recurrence of Sellers' penalty conduct.

The United States has presented persuasive evidence that it and the public will

suffer irreparable harm in the absence of the permanent injunction order recommended

below, and that Sellers will suffer little, if any harm if the permanent injunction order

is granted.  The United States' evidence and argument convinces the Court that

Sellers' tax positions are frivolous, and that the public interest will be served through

granting the permanent injunction recommended below.  The United States' evidence

also shows that absent this permanent injunction, Sellers will continue to violate 26

U.S.C. §§ 6700 and 6701 and to interfere with the administration of the internal

revenue laws. A permanent injunction under 26 U.S.C. §§ 7408 and 7402 is necessary and appropriate for the enforcement of the internal revenue laws. Provision to the United States of a list, and contact information for, all persons to whom Sellers sold a document preparation package, will allow a reasonable means for the United States to track compliance with the injunction to which it is entitled.

Accordingly, it is respectfully RECOMMENDED:

1.      That plaintiff's motion for entry of default judgment (doc. 65) be GRANTED.

2.      That the Court enter a default judgment against defendant July Grace Sellers.

3.      That pursuant to 28 U.S.C. §§ 7408 and 7402, the Court enter a permanent injunction against defendant Judy Grace Sellers on the terms provided in the United States' proposed order (doc. 68, pp. 6-8), which are as follows:

Defendant Judy Sellers and her representatives, servants, employees and anyone acting in active concert or participation with her, is hereby enjoined from:

> A.      Directly or indirectly organizing, promoting, marketing, or selling any plan or arrangement that advises or assists taxpayers to attempt to violate internal revenue laws or unlawfully evade the assessment or collection of their federal tax liabilities, including promoting, selling, or advocating the "Secured Party Creditor" document preparation service, "redemption scheme" or "strawman" scheme based on the false claims that:
>
> > i.      Taxpayers can name the Secretary of the Treasury as their fiduciary and/or can draw on the Treasury of the United States to pay their tax debt or other debt using Forms 1099-OID, bonded promissory notes, sight drafts or other documents;

      ii.     Taxpayers can issue false Forms 1099-OID to a creditor and report the amount on the false Form 1099 as income taxes withheld on their behalf; and

      iii.    Taxpayers have an account with the Treasury Department which they can use to pay their debts or which they can draw on for refunds through a process that is often called "redemption" or "commercial redemption."

B.     Engaging in conduct subject to penalty under 26 U.S.C. § 6700, including organizing or selling a plan or arrangement and making or furnishing a statement regarding the excludability of income or securing any other tax benefit that Sellers knows or has reason to know is false or fraudulent as to any material matter;

C.     Engaging in conduct subject to penalty under 26 U.S.C. § 6701, including preparing and filing tax returns and other documents that understate the tax liabilities of others;

D.     Preparing her own federal income tax returns claiming false income withholding and refunds based on false amounts shown on fabricated Forms 1099-OID issued to Sellers' creditors;

E.     Filing, providing forms for, or otherwise aiding and abetting the preparation and/or filing of frivolous Forms 56 Notice of Fiduciary, W-8 BEN, 1040 or 1099 for herself or others, including the notarization or signing of certificates of service or similar documents in connection with creating a "Secured Party Creditor" position, or otherwise filing frivolous tax returns;

F.     Engaging in any other conduct that is subject to penalty under the Internal Revenue Code or that interferes with the proper administration and enforcement of the internal revenue laws.

4.     That the Court further order defendant Judy Grace Sellers to perform the following within forty-five (45) days from the date of the Order of Permanent Injunction:

    A.    Remove all content from the website www.commercialredemption.com and replace it with a copy of the Order of Permanent Injunction for a period of three years; and

    B.    Contact by mail (and also by e-mail, if an address is known) all persons to whom Sellers sold a document preparation package between January 1, 2011, and the date of the Order of Permanent Injunction, and provide to counsel for the United States a list of those individuals to enable the United States to monitor Sellers' compliance with this provision.

5.     That the Clerk be directed to enter judgment according to the order adopting this Report and Recommendation, and according to the Court's  May 25, 2012 order dismissing Sellers' counterclaims and third-party claims.

At Pensacola, Florida this 30th day of April, 2013.

*/s/ Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).